UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| _____ | : | |
| MARK S. FRISINA, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 2:26-CV-4574 |
| vs. | : | |
| | : | |
| STRATA COMPANY | : | |
| | : | |
| and | : | |
| | : | |
| JEFFREY P. SAMMAK | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## COMPLAINT

Plaintiff, Mark S. Frisina, by his attorneys, Black & Gerngross, P.C., hereby files this Complaint and in support thereof avers as follows:

## PARTIES

1. Plaintiff, Mark S. Frisina, is an adult individual who is a citizen of the State of Florida with a domicile at 1137 Coquille St., Sarasota, Florida 34242.

2. Defendant, Strata Company ("Strata"), is a Pennsylvania corporation, formed and existing under the laws of the Commonwealth of Pennsylvania, domiciled in, and a citizen of, the Commonwealth of Pennsylvania, conducting its business in the

Commonwealth of Pennsylvania, with its principal place of business located at 5166 Campus Drive, Plymouth Meeting, Montgomery County, Pennsylvania 19462.

3. Defendant, Jeffrey P. Sammak ("Sammak"), is an adult individual who is a citizen of Pennsylvania, with a domicile at 511 Goldfinch Lane, Ambler, Montgomery County, Pennsylvania 19002.

4. At all material times referenced herein, defendant Strata was a performance-driven print, direct mail, and marketing execution company that was engaged in the business of providing integrated print and direct mail solutions, including services such as data-driven marketing, campaign execution, in-house print production, mailing and fulfillment, workflow automation, and omnichannel marketing support to help clients streamline marketing operations and improve campaign performance.

5. At all material times referenced herein, except where specifically noted otherwise, defendant Strata was acting by and through its agents, servants, and employees who were acting within the course and scope of their authority with defendant Strata.

6. At all material times referenced herein, defendant Sammak was the CEO, President, director, and majority shareholder of defendant Strata, a closely-held company under Pennsylvania law, and defendant Sammak was in effective control of the company. Defendant Sammak founded Strata in 1993.

7. At all material times referenced herein, defendant Sammak, as the majority shareholder, owed a fiduciary duty not to use his power to benefit himself personally at the expense of those holding a minority interest in Strata stock or deprive them of their proper share of benefits accruing from defendant Strata. As majority shareholder,

2

defendant Sammak also owed a duty of loyalty that when he acts in his own interest it must also be in the best interest of all shareholders and those having an interest in Strata stock and defendant Strata.

## JURISDICTION, VENUE AND GOVERNING LAW

8.     As stated above and below in this Complaint, plaintiff Frisina is a citizen of Florida and defendants Strata and Sammak are citizens of Pennsylvania and the damages at issue in this matter exceed $75,000.00.

9.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) as the parties are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10.     Venue is proper in this district because plaintiff Frisina and defendant Strata have agreed pursuant to paragraph 11 of a Promissory Note between them effective as of January 1, 2024, which is referenced more particularly hereafter, to waive any objection to venue in this district.  In addition, a substantial portion of the transactions and wrongs set forth in this Complaint occurred in this district.  Further, the principal place of business of defendant Strata is in this district as is the domicile of defendant Sammak.

11.     Pursuant to paragraph 10 of the aforesaid Promissory Note, the parties agree that the Note shall be governed by Pennsylvania substantive law without regard to principles of conflicts of law.

## FACTS

**A. Background**

12.    Prior to January 2007, plaintiff Frisina had been the owner of Insights Direct, a marketing company focused primarily on New Mover Marketing programs for healthcare systems/hospitals and grocery retailers.  The company was engaged in the business of providing end-to-end marketing services including strategic planning, creative design, outsourced print and direct mail production, fulfillment operations, data management, and campaign reporting/analytics. Insights Direct further specialized in highly targeted customer acquisition programs designed to drive measurable response and retention from consumers who had recently relocated into a market area.

13.    On January 12, 2007, Insights Direct was merged into defendant Strata with defendant Strata becoming the surviving entity.

14.    Immediately after the merger, Sammak owned seventy-five percent (75%) of Strata and Frisina owned the remaining twenty-five percent (25%).

15.    Following the merger, plaintiff Frisina and defendant Sammak initially continued to oversee their respective areas of business while integrating operations.

16.    Over time, defendant Sammak transitioned into the role of CEO/President with oversight of print operations, finance, personnel, marketing, and overall company management.

17.    Plaintiff Frisina transitioned from President of Insights Direct into the role of Vice President of Sales at Strata with primary responsibility for business development, sales management, client satisfaction, and executive oversight of Strata's largest customer relationships, many of whom plaintiff Frisina originated and developed.

18.    Plaintiff Frisina agreed, effective January 1, 2010, to return 6.625% of his ownership interest to defendant Sammak such that Sammak's ownership interest in

Strata increased to 81.624% and plaintiff Frisina's ownership interest in Strata was reduced to 18.376%.

19.     Subsequently, defendant Sammak reduced his ownership in Strata to 61.624% by transferring non-voting shares for the benefit of two of his family members who each received a ten percent (10%) ownership interest in defendant Strata.

20.     From that time and through Plaintiff Frisina's departure, plaintiff Frisina,  in anticipation of leaving defendant Strata, transitioned his customer relationships to other individuals at Strata.

### B.  The Buyout Transaction

21.     On June 18, 2024, effective as of January 1, 2024, plaintiff Frisina entered into a Stock Redemption Agreement, Promissory Note, and Escrow Agreement with Strata regarding the plaintiff's resignation of his employment with defendant Strata on October 4, 2024, and Strata's buyout of Frisina's ownership interest in the company ("Buyout Transaction").   True and correct copies of the Stock Redemption Agreement, Promissory Note, and Escrow Agreement are attached hereto collectively as Exhibit "1" with the Promissory Note and Escrow Agreement attached to the Stock Redemption Agreement as Exhibits A and B respectively.

### i.     Redemption Agreement

22.     Pursuant to the Stock Redemption Agreement ("Redemption Agreement"), *inter alia*, plaintiff Frisina agreed to redeem and transfer all of the shares of stock that had previously been issued to him by Strata in exchange for a purchase price of $2.4 million paid in four installments of $600,000 each.  The initial payment of $600,000 had two components.  They consisted of a cash payment to Frisina of $557,700 on June 21, 2024

and a separate tax payment of $42,300 made by defendant Strata on plaintiff Frisina's behalf.

23.     Thereafter, the remaining $1.8 million of the purchase price was to be paid pursuant to the Promissory Note.

24.     Until the Promissory Note is paid in full, paragraph 9(e) of the Redemption Agreement requires defendant Strata to provide plaintiff Frisina with year-end financial statements when they are available and company-generated quarterly financial statements.

25.     Thus, paragraph 9(e) of the Redemption Agreement requires defendant Strata to provide plaintiff Frisina with two different types of financial statements depending on whether the statement is a quarterly statement or a year-end statement.

26.     With respect to the quarterly statement, paragraph 9(e) provides that defendant Strata will provide "company generated quarterly financial sttaments" which means statements that are typically created internally by the company for management use and are not required to adhere to formal standards.

27.     Regarding the year-end statements, paragraph 9(e) requires defendant Strata to provide "year-end financial statements when they are available" which means formal financial statements that are prepared according to standardized accounting principles such as Generally Accepted Accounting Principles ("GAAP") and usually audited ("Formal Year-End Statements").

28.     The Redemption Agreement further provides as follows in paragraph 10(h):

> (h) Entire Agreement; Modifications.  This Agreement, together with the Exhibits [Promissory Note and Escrow Agreement] and the Employment Agreement, represent the entire understanding and agreement of the parties and supercede any prior or contemporaneous agreements or

6

understandings, whether oral or written, between the parties, including without limitation the Tolling Agreement.  No amendment or modification of this Agreement shall be effective unless in writing and signed by all parties.

**ii.    Promissory Note**

29.    Pursuant to paragraph 1 of the Promissory Note, the balance of $1.8 million was to be paid in three (3) installments of $600,000 together with accrued interest on April 15, 2025, April 15, 2026, and April 15, 2027.

30.    Paragraphs 4 and 5 of the Promissory Note provide in pertinent part that:

4.    Event of Default.  It will be an "**Event of Default**" under this Note if: (a) the Company fails to make any payment of any sum due under this Note within 10 days after receipt of written notice of the failure to timely pay such sum…

5.    Remedies.  If an Event of Default occurs, Creditor: (a) may declare the unpaid principal balance of this Note, together with accrued but unpaid interest, immediately due and payable; (b) may recover from the Company all costs of collection including, without limitation, reasonable attorneys' fees and costs; and (c) may exercise such rights and remedies available to him under the Escrow Agreement.  Except for the foregoing, the sole remedy in an Event of Default is the return of the Shares.  In the event that Frisina becomes a shareholder of the Company as the result of the return of the Shares, then the parties shall work in good faith to enter into a reasonable and customary shareholders' agreement.

31.    Paragraph 3 of the Promissory Note provides that:

3.    Security.  The obligations of the Company under this Note shall be secured by three-quarters of the Redeemed Shares (as defined in the Redemption Agreement) ("**Collateral**") which shall be held pursuant to an escrow agreement executed between the parties.  The chosen escrow agent shall hold the Collateral in the form identified in Section [blank in original] of this Note and release Collateral pursuant to Section [blank in original] of this Note.

(a) The Collateral shall be held in the form of six (6) share certificates, including three (3) share certificates of and for 577,603.50 non-voting shares of the Company (the **"Non-Voting Certificates"**) and three (3) share certificates of and for 5,834.25 voting shares of the Company (the "**Voting Certificates**").

7

The chosen escrow agent shall, upon written confirmation from Creditor that Creditor has received a payment, release one (1) Non-Voting Certificate and one (1) Voting Certificate to the Company.

32.     In addition, paragraph 3.1 of the Escrow Agreement addresses when disbursements of the **Non-Voting Certificates** and **Voting Certificates** (collectively the "**Escrowed Shares**" could occur.  It provides:

> 3.1     Events of Disbursement.  Escrow Agent shall hold the Escrowed Shares in escrow and only distribute the same as follows:
>
> (a) upon written confirmation from Buyer to Escrow Agent and Seller (along with written proof from Buyer in the form of a wire transfer confirmation) of Buyer timely and fully making an annual payment to Seller pursuant to Section 1 of the Note, Escrow Agent shall release one (1) Non-Voting Certificate and one (1) Voting Certificate to Buyer in respect of such annual payment;
>
> (b) upon written confirmation from Seller to Escrow Agent and Buyer (along with written proof from Seller) of the failure of Buyer to timely and fully make an annual payment to Seller pursuant to Section 1 of the Note, Escrow Agent shall release one (1) Non-Voting Certificate and one (1) Voting Certificate to Seller in respect of such failure; provided that the certificate shall not be released until after the notice and opportunity to cure period set forth in the Note; or
>
> (c) In accordance with joint written instructions signed by both Buyer and Seller.

### iii.     The Treatment of Frisina's Shares Pending Payment

33.     The Redemption Agreement, at Paragraph A of the Background, defined the "Redeemed Shares" as "Frisina has been issued 2,310,414 Non-Voting Shares and 23,337 Voting Shares."

34.     According to Paragraph 3 of the Note, the obligations of Strata under the Note were secured by "three-quarters of the Redeemed Shares (as defined in the Redemption Agreement)" which were to be held pursuant to the Escrow Agreement.

8

35.    Pursuant to the Escrow Agreement, three-quarters of the Redeemed Shares were delivered to the Escrow Agent, and held as collateral.

36.    The Stock Power which is attached as Exhibit "B" to the Redemption Agreement, was expressly made subject to the terms and conditions of the Redemption Agreement and the Escrow Agreement.

37.    As a result of the structure of the Buyout Transaction, plaintiff Frisina effectively retained a 13.783% aggregate interest in the voting and non-voting shares of defendant Strata in the form of security held in trust for plaintiff Frisina's benefit under the Escrow Agreement.

**C. Defendant Sammak's Wrongful Conduct**

38.    Upon information and belief, at the time that plaintiff Frisina left Strata in October 2024, the company had an approximate value in excess of $16 million.

39.    On or about April 15, 2025, defendant Strata paid plaintiff Frisina the sum of $600,000, together with accrued interest, as the first installment due under the Promissory Note.

40.    However, on March 3, 2026, defendant Sammak advised plaintiff Frisina that because of defendant Strata's financial performance in 2025, it would be unlikely that defendant Strata will make the payment to him due on April 15, 2026 under the Promissory Note.  Defendant Sammak further advised that he will plan on returning plaintiff Frisina's remaining stock.

41.    Defendant Strata has only provided draft annual (not Formal Financial Statements) and company created quarterly financial statements for the years 2024 and

2025. Plaintiff Frisina did not receive the company created quarterly financial statement for the first quarter of 2026 – the quarter immediately preceding the default – until June 24, 2026.

42.     A review of the company created financial statements provided by defendant Strata identify a substantial loan to officer during the first quarter of 2025 and suggest that since the effective date of the Buyout Transaction, including the loan, several million dollars were disbursed from defendant Strata to shareholders other than defendant Frisina.  These financial statements also contain inconsistencies between them.

43.     Upon information and belief, the loan to officer was made to defendant Sammak.  Based upon the financial statements provided by defendant Strata to plaintiff Frisina, the amount of the loan was $1,250,000 – which was the approximate outstanding principal and interest owed to plaintiff Frisina under the Promissory Note.

44.     In addition, it appears that the loan was made sometime between October 2024 and the end of the first quarter of 2025 – shortly after plaintiff Frisina had left the company. The company created draft financial statements for year-end 2025 (not Formal Financial Statements) identify a reduction in the loan of $591,000 leaving a loan balance of $659,000.  This amount also closely approximates the amount of the defaulted second installment of $600,000 plus accrued interest owed to plaintiff Frisina under the Promissory Note on April 15, 2026.

45.     Upon information and belief, defendant Sammak caused all of the funds referenced in paragraphs ____ and ____ to be distributed from defendant Strata to defendant Sammak himself or some of these funds to his family members as well thereby

leaving defendant Strata with insufficient funds to make the April 15, 2026 payment to plaintiff Frisina and causing defendant Strata to breach the Promissory Note.

46.     Further, upon information and belief, the aforesaid disbursements greatly impaired the value of defendant Strata and its stock including the stock held in escrow as security for the Promissory Note.

**COUNT I**
**Plaintiff v. Strata Company**
**<u>Breach of Contract</u>**

47.     The averments contained in paragraphs 1 through 46 are incorporated herein by reference as though set forth at length herein.

48.     Pursuant to paragraph 1 of the Promissory Note, the sum of $600,000 plus accrued interest at a rate equal to the average of the Long-Term IRS Applicable Federal Rate (non-compounding) was due and payable to plaintiff Frisina from defendant Strata on April 15, 2026.

49.     Defendant Strata failed to make payment to plaintiff Frisina on April 15, 2026 in breach of paragraph 1 of the Promissory Note.

50.     Accordingly, pursuant to paragraph 4 of the Promissory Note, plaintiff Frisina notified defendant Strata of the failure to make payment.  A true and correct copy of the notice is attached hereto as Exhibit "B" ("Notice Letter").  The Notice Letter was provided by overnight courier and was received by the defendant on April 28, 2026.

51.     More than ten (10) days have passed since the receipt by defendant Strata of the Notice Letter and defendant Strata has failed to pay the installment due on April 15, 2026.  This amount remains unpaid.

52.    Pursuant to paragraph 5 of the Promissory Note, plaintiff Frisina declares the unpaid principal balance of the Note of $1.2 million dollars together with accrued interest immediately due and payable to the plaintiff.

WHEREFORE, plaintiff, Mark S. Frisina, demands judgment in his favor against defendant Strata Company, in the amount of ONE MILLION TWO HUNDRED THOUSAND DOLLARS ($1,200,000.00) together with accrued interest due thereon, attorneys' fees and costs of suit.

## COUNT II.
### Breach of Fiduciary Duty/Majority Shareholder Oppression
### Plaintiff v. Jeffrey P. Sammak

53.    The averments contained in paragraphs 1 through 52 are incorporated herein by reference as though set forth at length herein.

54.    Defendant Sammak's wrongful conduct as set forth above constituted a breach of his fiduciary duty as majority shareholder of defendant Strata, to plaintiff Frisina as the holder of a minority interest in the Strata Stock, in that Defendant Sammak used his majority interest to benefit himself personally at the expense of plaintiff Frisina, thus depriving Frisina of receiving his proper share of benefits accruing from Defendant Strata.

55.    As a result of defendant Sammak's actions, plaintiff Frisina has suffered damages in an amount equal to the greater of $1.2 million plus accrued interest, or the aggregate of plaintiff's Frisina's *pro rata* share of the distributions defendant Sammak caused to be made to himself and other shareholders from January 1, 2024 to the present.

WHEREFORE, plaintiff, Mark S. Frisina, demands judgment in his favor against defendant Jeffrey P. Sammak, in an amount equal to the greater of ONE MILLION TWO

12

HUNDRED THOUSAND DOLLARS ($1,200,000), together with accrued interest due thereon, or the *pro rata* share of the distributions made by Strata from January 1, 2024 to the present, together with attorneys' fees and costs of suit.

**COUNT III.**
**Breach of Fiduciary Duty by Defendant Sammak**
**Plaintiff v. Jeffrey P. Sammak**

56. The averments contained in paragraphs 1 through 55 are incorporated herein by reference as though set forth at length herein.

57. The terms and conditions of the Promissory Note and Escrow Agreement created a pledgor/pledgee relationship between defendant Strata and plaintiff Frisina with respect to the Strata stock that was placed into escrow to secure defendant Strata's payment obligations to plaintiff Frisina under the Promissory Note.

58. Defendant Sammak, as an officer, director, majority shareholder and effectively in complete control of defendant Strata, owed fiduciary duties of loyalty and care to plaintiff Frisina, as pledgee of defendant Strata's stock, to preserve the corporate assets of defendant Strata and value of defendant Strata's stock for the benefit of plaintiff Frisina and was required to discharge those duties in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances.

59. Defendant Sammak's aforesaid wrongful conduct in acting in his own self-interest and making excessive disbursements of defendant Strata's assets to himself and his family thereby rendering defendant Strata unable to meet its payment obligations under the Promissory Note and impairing the value of Strata stock such that it is

13

insufficient security for defendant Strata's payment obligations under the Promissory Note, constitute breaches of defendant Sammak's fiduciary duties to plaintiff Frisina.

60.    As a result of the defendant Sammak's breach of fiduciary duties, plaintiff Frisina has suffered damages in an amount equal to the greater of $1.2 million plus accrued interest or the aggregate of plaintiff's Frisina's pro rata share of the distributions defendant Sammak caused to be made to himself and other shareholders from January 1, 2024 to the present.

WHEREFORE, plaintiff, Mark S. Frisina, demands judgment in his favor against defendant, Jeffrey P. Sammak, in the amount of the greater of ONE MILLION TWO HUNDRED THOUSAND DOLLARS ($1,200,000.00) together with accrued interest due thereon or the *pro rata* share of the distributions made by Strata from January 1, 2024  to the present, attorneys' fees and costs of suit.

## COUNT IV.
### Breach of Fiduciary Duty by Defendant Strata
### Plaintiff v. Strata Company

61.    The averments contained in paragraphs 1 through 60 are incorporated herein by reference as though set forth at length herein.

62.    Defendant Strata, as pledgor, owed a fiduciary duty to plaintiff Frisina as pledgee, to preserve the corporate assets of defendant Strata and not to take steps that would impair the value of plaintiff Frisina's stock which served as security for defendant Strata's payment obligations to plaintiff Frisina under the Promissory Note.

63.    Defendant Strata's failure to protect and preserve the assets of defendant Strata and the value of plaintiff Frisina's stock by permitting excessive disbursements of

14

defendant Strata's assets to be made to defendant Sammak and his family constitutes breaches of defendant Strata's fiduciary duty to plaintiff Frisina as those actions rendered defendant Strata unable to meet its payment obligations to plaintiff Frisina under the Promissory Note and impaired the value of Strata stock as security for those obligations.

64.    As a result of defendant Strata's aforesaid breaches of fiduciary duty, plaintiff Frisina has suffered damages in an amount equal to $1.2 million plus accrued interest.

WHEREFORE, plaintiff, Mark S. Frisina, demands judgment in his favor against defendant, Strata Company, in the amount of ONE MILLION TWO HUNDRED THOUSAND DOLLARS ($1,200,000.00) together with accrued interest due thereon, attorneys' fees and costs of suit.

## COUNT V.
### Aiding and Abetting Breach of Fiduciary Duty
### Plaintiff v. Jeffrey P. Sammak

65.    The averments contained in paragraphs 1 through 64 are incorporated herein by reference as though set forth at length herein.

66.    Alternatively, if defendant Sammak owed no fiduciary duty to plaintiff Frisina as pledgee, defendant Sammak knew of defendant Strata's fiduciary duty to plaintiff Frisina as pledgee, and caused defendant Strata to breach such duty by making excessive disbursements of defendant Strata's assets to himself and his family thereby rendering defendant Strata unable to meet its payment obligations to plaintiff Frisina under the Promissory Note and impairing the value of plaintiff Frisina's stock such that

15

the stock has insufficient value to secure defendant Strata's payment obligations under the Promissory Note.

67.    Defendant Sammak made the excessive distributions with the knowledge or intent that the aforesaid disbursements would impair the ability of defendant Strata to meet its obligations to plaintiff Frisina and aided, abetted, and provided substantial assistance  to defendant Strata with respect to the aforesaid breach of fiduciary duty by participating and assisting in the making of the aforesaid distributions to himself or family.

68.    As a result of defendant Sammak having aided and abetted the breach of fiduciary duty owed by defendant Strata to plaintiff Frisina, plaintiff Frisina has suffered damages in an amount equal to $1.2 million plus accrued interest.

WHEREFORE, plaintiff, Mark S. Frisina, demands judgment in his favor against defendant, Jeffrey P. Sammak, in the amount of ONE MILLION TWO HUNDRED THOUSAND DOLLARS ($1,200,000.00) together with accrued interest due thereon, attorneys' fees and costs of suit.

**COUNT VI.**
**Tortious interference with Contract**
**Plaintiff v. Jeffrey P. Sammak**

69.    The averments contained in paragraphs 1 through 68 are incorporated herein by reference as though set forth at length herein.

70.    Alternatively to Counts I, II, III, IV, and V,  at all times referred to in this Count VI, defendant Sammak was acting in his personal capacity for his own self-interest and purpose and contrary to the interests of defendant Strata and was not acting within the

16

course and scope of his employment and authority as an employee, officer, and director of defendant Strata.

71.     Upon information and belief, defendant Sammak's aforesaid wrongful conduct was done without justification or privilege and for the purpose of interfering with the terms and conditions of the Promissory Note between defendant Strata and plaintiff Frisina such that defendant Sammak intended to cause harm to plaintiff Frisina by defendant Sammak making excessive disbursements of corporate assets to himself or his family member shareholders thereby rendering defendant Strata unable to meet its payment obligations to plaintiff Frisina under the Promissory Note.

72.     Upon information and belief, this same wrongful conduct and purpose also caused a devaluation in the stock of Strata which impaired the Strata stock pledged to Frisina as security for the payment obligations under the Promissory Note.

73.     Upon information and belief, defendant Sammak's aforesaid wrongful conduct and purpose caused plaintiff Frisina harm in that it caused defendant Strata to breach its payment obligation to Frisina under the Promissory Note and likewise significantly impaired the value of the pledged security causing plaintiff Frisina to sustain damages in the amount of $1.2 million plus accrued interest.

WHEREFORE, plaintiff, Mark S. Frisina, demands judgment in his favor against defendant, Jeffrey P. Sammak, in the amount of ONE MILLION TWO HUNDRED THOUSAND DOLLARS ($1,200,000.00) together with accrued interest due thereon, attorneys' fees and costs of suit.

17

BLACK & GERNGROSS, P.C.
Attorneys at Law

Dated: July 1, 2026                BY:    _/s/ Jeffrey B. Miceli_____

Jeffrey B. Miceli, Esquire
Mark W. Drasnin, Esquire
1617 John F. Kennedy Blvd., Suite 1575
Philadelphia, PA 19103
Telephone: 215-636-1650
Email: jmiceli@blackgern.com
        mdrasnin@blackgern.com
*Attorneys for Plaintiff*